Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| HOLSUM DE PUERTO RICO, INC.<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES<br><br>Agencia Recurrida | TA2025RA00251 | REVISIÓN JUDICIAL Procedente del Departamento de Recursos Naturales y Ambientales<br><br>Caso Núm.: 22-121<br><br>Sobre: Solicitud de Dispensa |
|---|---|---|

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de noviembre de 2025.

El 24 de septiembre de 2025, Holsum de Puerto Rico, Inc. (Holsum o la recurrente) sometió ante nos un *Recurso de Revisión Administrativa* mediante el cual ausculta la revocación de la *Resolución y Notificación* emitida en el caso de epígrafe el 16 de mayo de 2025, notificada el día 19. Por virtud del aludido dictamen, el Departamento de Recursos Naturales y Ambientales (DRNA o agencia recurrida) denegó la petición de dispensa que la recurrente hizo el 27 de abril de 2018, para que se le eximiera del cumplimiento estricto con los requisitos de la Regla 419(A) del Reglamento para el Control de la Contaminación Atmosférica de la Junta de Calidad Ambiental, Reglamento Número. 5300 del 28 de agosto de 1995. (Reglamento Núm. 5300).[1]

---

[1] La Regla 419(A) lee:
(A) Ninguna persona causará o permitirá la emisión de más de 1.36 Kg (3 libras) de compuestos orgánicos volátiles en cualquier hora, o más de 6.8 Kg (l5 libras) por día en cualquier artículo, máquina, equipo o cualquier otro artefacto sin que dicho equipo este provisto de un sistema de control aceptable, programa o mecanismo de reducción y prevención de emisiones o ambos, según sea aprobado o requerido por la Junta.

**-I-**

A los fines de evaluar la determinación recurrida y explicar adecuadamente la decisión que hoy alcanzamos, a continuación, resumimos los eventos más importantes que causaron el recurso de epígrafe; particularmente, aquellos pertinentes a la controversia a ser resuelta.

Conforme surge del legajo, el 23 de mayo de 2022, Holsum presentó una *Solicitud de Adjudicación Formal Mediante Procedimiento Adjudicativo*. Allí, hizo referencia a varias solicitudes de dispensa previamente sometidas ante el DRNA para que se le exceptuara de cumplir con la Regla 419 del Reglamento 5300.[2] Asimismo, reclamó que la denegatoria de estas peticiones se hizo sin brindarle oportunidad de suplementar y sin explicar ni detallar los fundamentos por los que, a juicio del DRNA, la información que sometió es insuficiente; en claro incumplimiento con la Regla 301 (E) del mismo reglamento. Según Holsum, la información que sometió reveló que los niveles de ozono en Puerto Rico cumplen con los estándares nacionales establecidos por la Agencia de Protección Ambiental (EPA). Por tanto, arguyó que los umbrales de emisión establecidos por la Regla 419 del Reglamento 5300 eran caprichosos y arbitrarios al no estar vinculados con los fines y objetivos que persigue la mencionada normativa.

Igual de caprichosa y arbitraria catalogó la parte recurrente el que la agencia recurrida notificara su denegatoria mediante una carta proforma que ni siquiera explica por qué fue rechazada. Según Holsum, el DRNA se limitó sólo a indicar que a su juicio no presentó información suficiente para establecer que la dispensa no causará ni contribuirá a la contaminación del aire en exceso de ningún NAAQS, ni exacerbará ninguna violación

---

[2] Particularmente, a las peticiones que con el mismo propósito presentó ante el DRNA mediante cartas del 19 de abril de 2016 y el 27 de abril de 2018. Inclusive, y en cuanto a la última de estas, se informó que, mediante misiva del 27 de abril de 2022, la agencia recurrida la denegó.

existente; no brindó estimados de concentraciones de calidad de aire basados en los modelos de dispersión aplicables; no demostró hacer esfuerzos para controlar o prevenir las condiciones que causaron la petición de la dispensa, y (4) no ofreció base científica, estudios de relevancia, ni análisis de costos que sustenten su solicitud de dispensa. Por lo cual, afirmó que esto era incorrecto.

En primer lugar, ripostó que la solicitud de dispensa se basó en los datos recopilados por la propia agencia, por lo que era incomprensible que se concluyera que la información sometida era insuficiente. Luego, señaló que los umbrales de la Regla 419 (A), son altamente restrictivos y conservadores. A tales efectos, incluyó una comparativa de la estructura de cumplimiento que se utiliza en otras jurisdicciones de los Estados Unidos, para destacar que en nuestra jurisdicción se aplica la mencionada regla indiscriminadamente, sin diferenciar área de no logro para el ozono. Según la recurrente, los límites restrictivos de la Regla 419 (A) obliga a que industrias se vean obligadas a invertir cuantiosas sumas de dinero en el diseño, la adquisición, operación y mantenimiento de equipos de control de emisiones de COV, pese a que la aportación que dicho equipo haría a la protección del ambiente es insignificante o mínima y no justificaba los costos y gastos onerosos de su implementación.

En segundo lugar, Holsum afirmó que la agencia recurrida normalmente suele permitir que se suplemente una solicitud para proveer cualquier información adicional que la agencia estime necesaria, por lo que denegar la dispensa sin siquiera permitirle así hacer, también constituía una acción caprichosa y arbitraria de su parte. De otra parte, aseveró que demostró haber hecho esfuerzos razonables para cumplir con el umbral de emisiones, puesto que acreditó haber presentado un plan de cumplimento en el que se identificó un equipo de control de emisiones. No obstante, afirmó que la instalación del referido equipo no adelantaría los fines del

Reglamento 5300, pese a representar una inversión onerosa de alrededor de un millón de dólares, más gastos anuales ascendentes a $80,000.00 anuales. Mucho más, cuando al solicitar la dispensa estableció que redujo la producción en las unidades pertinentes, lo que implicaba una reducción en las emisiones.

Por todas estas razones, Holsum solicitó al DRNA que adjudicara formalmente su solicitud y emitiera una dispensa general de cumplimiento con la Regla 419 que aplicara a todas las entidades reguladas, según fue en su día discutido con personal del DRNA. En la alternativa, peticionó que se declararan nulos los umbrales de emisión establecidos por la Regla 419(A) del Reglamento 5300 por ser caprichosos y arbitrarios y no estar vinculados con sus propios fines.

Al contestar la solicitud de adjudicación formal, en síntesis, el DRNA indicó que los muestreos realizados en el año 2013 revelaron que un horno de pan y otro de panecillos (específicamente, las unidades EU-6 y EU-7) de Holsum excedían las emisiones autorizadas; que por esa razón sometió un plan de cumplimiento para atender esta situación, pero que, en lugar de obtener el equipo, se ha dedicado a intentar obtener una dispensa bajo argumentos improcedentes. Según la agencia, aunque la recurrente solicita una dispensa, en su petición no establece adecuadamente por qué la misma procede. Cabe destacar que, con su contestación, y en apoyo a los hechos bajo los cuales esta fue apoyada, el DRNA sometió varios anejos. Igual de meritorio es mencionar que Holsum replicó la respuesta del DRNA, quien respondió con una dúplica.[3] Luego de estos escritos, el asunto quedó sometido para ser resuelto.[4]

Así las cosas, el 2 de noviembre de 2022, Holsum solicitó autorización para realizar descubrimiento de prueba. Esta petición fue

---

[3] Anejos 6 y 7 del Apéndice, págs. TA 6-1ª la TA 7-12.
[4] *Orden y Notificación del 11 de octubre de 2022*, Anejo 8 del Apéndice del recurso.

denegada al día siguiente, pues el asunto había quedado sometido. [5] Por su parte, el 4 de marzo de 2025, el Oficial Examinador al que le fue asignada la controversia emitió su informe. Allí, adoptó por referencia los fundamentos esbozados por el DRNA para denegar la dispensa solicitada. Particularmente, decretó que según la parte recurrida demostró, desde el año 2006 la recurrente ha tenido expedido un permiso con la condición de instalar un equipo de control en las unidades EU-6 y EU-7 y que no es hasta 10 años después que solicita una dispensa para no cumplir con la aludida condición. También concluyó que Holsum no demostró que la actuación del DRNA constituyó abuso de discreción o que la aplicación de la Regla en cuestión se hizo arbitraria o caprichosamente. Esto, pues la misma le es aplicada indiscriminadamente a todas las fuentes que tengan equipos o procesos afectados por la misma. Así pues, recomendó al Secretario emitir resolución final y denegar la dispensa.

El 16 de mayo de 2025, notificada el 19, se emitió una *Resolución* mediante la cual se acogió el informe expedido por el Oficial Examinador; en particular la recomendación de no conceder la dispensa que Holsum solicitó. El 9 de junio de 2025, la recurrente solicitó reconsideración de esta decisión ante la agencia. Al hacerlo, reclamó que la determinación debía ser revocada pues acogió un informe en el que se hicieron múltiples determinaciones de hechos sin celebrarse una vista administrativa y recibirse prueba pericial y/o documental conforme exigen las reglas de procedimientos de vistas administrativas en todo caso en que se adjudiquen hechos y derechos de otras partes. Esto, pues existe controversia en cuanto a:

i. Si conceder la dispensa causaría, contribuiría o exacerbaría una violación de las normas nacionales de calidad de aire.
ii. Si el DRNA aplica la Regla 419 uniformemente.

---

[5] Anejo 9 del Apéndice; págs. 9-1 a la 9-11 y Anejo 10; págs. 10-1 a la 10-2.

iii. Si declarar nulos los umbrales de la Regla 419(a) podría causar un aumento en las emisiones de 90% para las demás entidades reguladas.

Más allá de eso, reiteró sus argumentos. Posteriormente, el 10 de julio de 2025, Holsum sometió una moción para actualizar la información sobre el esquema reglamentario utilizado en otras jurisdicciones para regular las emisiones de compuestos orgánicos volátiles (COV) y los daños de ozono en Puerto Rio entre los años 2019 y 2025, lo que a su entender demostraba que la Regla 419(A) era caprichosa y arbitraria.[6] Habiéndose solicitado una prórroga para que el Interés Público se expresara en cuanto a la reconsideración, así lo hizo el 14 de agosto de este año.[7] En síntesis, reformuló los argumentos ya levantados. La parte recurrente replicó este escrito.[8] Atendidos estos escritos, el 21 de agosto de 2025, el DRNA dictó una *Resolución* en la que declaró NHL la reconsideración sometida.

En desacuerdo aun, Holsum instó el recurso de epígrafe y señaló la comisión de los siguientes errores:

PRIMER ERROR: Erró el DRNA al denegar la Solicitud de Dispensa sin antes celebrar una vista evidenciaria para dirimir las controversias de hechos existentes y que surgen claramente del expediente administrativo, en contravención a lo requerido por la reglamentación aplicable.

SEGUNDO ERROR: Erró el DRNA al denegar sin justificación ni fundamentos la Solicitud de Dispensa, toda vez que la petición de Holsum cumplió con lo requerido por el RCCA.

TERCER ERROR: La Regla 419 es arbitraria y caprichosa, toda vez que los umbrales de emisión que provee la Regla no se apoyan en una base científica que se ajuste a la realidad en Puerto Rico y no se aplican de manera uniforme a toda la comunidad regulada.

Habiéndosele ordenado a comparecer, y tras obtener una prórroga para ello, el 3 de noviembre de 2025, el DRNA presentó *Escrito en Cumplimiento de Resolución* en la que expuso su posición en cuanto al recurso de epígrafe. El 10 de noviembre de este año, Holsum instó *Moción en solicitud de Breve Término para Replicar a Escrito en Cumplimiento de Resolución.*

---

[6] Anejo 15 del Apéndice, págs. 15-1 a 15-28.
[7] Anejo 16 del Apéndice, págs. 16-1 y 16-2.
[8] Anejo 19 del Apéndice, págs. 19-1 y 19-4.

Hoy, aparte, se notificó *Resolución* mediante la que declaramos No Ha Lugar su pedido. Habida cuenta de ello, con el beneficio de la comparecencia de todas las partes, en este día también damos por sometido el asunto y procedemos a resolver la cuestión ante nos planteada.

-II-

A.

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[9]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las

---

[9] 3 LPRA Sec. 9675.

conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

[A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, **los tribunales no tienen que darle deferencia <u>a la interpretación de derecho</u> que haga una agencia simplemente porque la ley es ambigua."** (énfasis en el original)

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999) (citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012) (citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

*B.*

El Artículo VI, Sección 19 de nuestra Constitución consigna que "será política pública del Estado Libre Asociado de Puerto Rico la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad..."[10] En respuesta a dicho mandato constitucional, el 18 de junio de 1970, se aprobó la Ley sobre Política Pública Ambiental del Estado Libre Asociado de Puerto Rico, mediante la cual se creó la Junta de Calidad Ambiental, primer organismo en Puerto Rico dedicado a atender de modo integral los asuntos concretos en relación con la administración del medio ambiente.[11]

El antes aludido estatuto le reconoció a la JCA la autoridad de adoptar reglas para su organización y procedimientos internos; para establecer, mediante reglamentos, los requisitos que a su juicio sean necesarios para el control de emisiones y para la prevención, disminución o control de daños al ambiente y a los recursos naturales; y establecer

---

[10] LPRA, Tomo 1, ed. 1982, pág. 379

[11] Este estatuto fue posteriormente derogado y sustituido por la Ley 416-2004, mejor conocida como la Ley Sobre Política Pública Ambiental. Es meritorio mencionar que la Ley 171-2018, mejor conocida como el Plan de Reorganización del Departamento de Recursos Naturales de 2018, transfirió, agrupó y consolidó en el DRNA las facultades, funciones, servicios y estructuras de la JCA, entre otras. Esta ley, instruye en su sección 92 que "[c]ualquier referencia a la Junta de Calidad Ambiental, contenida en cualquier ley, reglamento o documento oficial del Gobierno de Puerto Rico, se entenderá enmendada a los efectos de referirse al Departamento de Recursos Naturales y Ambientales que se entenderá como su sucesor para todos los fines legales correspondientes."

mecanismos de permisos y licencias que regule el control de la contaminación de aire, agua, desperdicios sólidos y ruidos; entre otras facultades.[12]

Entre los reglamentos que la Junta de Calidad Ambiental aprobó, se encuentra el Reglamento Núm. 5300. En lo concerniente al caso, debemos mencionar que la parte III de dicho cuerpo normativo regula la concesión de dispensas. Así pues, en su Regla 301, incisos (B) y (D), el aludido reglamento establece las normas para otorgar las dispensas, así como lo que toda solicitud de dispensa debe incluir. Igualmente indica la acción sobre las solicitudes. Particularmente sobre esto, el inciso (E) de la Regla 301 del Reglamento Núm. 5300 dispone, que la Junta actuará sobre solicitudes completas dentro de un tiempo razonable, pero bajo circunstancias normales, no más tarde de 60 días luego de concluido cualquier período de participación pública o vista pública. La concesión o denegación de la decisión deberá ser notificada por escrito expresándose las razones por las cuales se determinó que las normas fueron satisfechas o no lo fueron, según sea el caso.[13]

*C.*

El 23 de junio de 1972, la Asamblea Legislativa de Puerto Rico aprobó la Ley Orgánica del Departamento de Recursos Naturales y Ambientales, 3 LPRA, sec. 151 et seq. Esta, le impuso al DRNA la responsabilidad de poner en vigor diversos programas para la utilización y conservación de los recursos naturales de Puerto Rico. Ello con el fin de implementar la política pública del Gobierno de Puerto Rico estatuida en el Artículo VI, Sección 19 de nuestra Constitución, *supra.* Así pues, y con dicho propósito, se le reconoció al Secretario del DRNA la facultad de aprobar, enmendar y derogar reglamentos.[14]

---

[12] Artículo 11 de la derogada Ley 9 del 1970.
[13] *Íd.,* Regla 301(E) (1) y (2).
[14] 3 LPRA Secs. 153 y 155.

Bajo la antes mencionada autoridad, se aprobó el Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales de Puerto Rico, Reglamento Núm. 6442 del 26 de abril de 2002. Por sus propias disposiciones, dicho reglamento habría de regir los procedimientos adjudicativos que se llevan a cabo ante el DRNA, excepto a la Junta de Revisión de Subastas Formales. Según el mismo, todo procedimiento adjudicativo se inicia con la presentación de una querella, solicitud o petición en relación con un asunto que esté bajo la jurisdicción del Departamento.[15] En su artículo 24, el Reglamento 6642 establece lo relacionado a la conferencia con antelación a la vista. Mientras, su artículo 25 regula la notificación de la vista y el artículo 27 lo concerniente al procedimiento durante la vista.

No obstante, y conforme al Artículo 29 del Reglamento 6442, el oficial examinador que presida el procedimiento podrá recomendar que se desestime o que se disponga del asunto sumariamente cuando la querella, solicitud u orden a requerimiento de parte: (a) no plantea hechos que justifiquen la concesión de un remedio; (b) no haya controversia real en los hechos y como cuestión de derecho proceda que se dicte resolución a favor de la parte promovente. La desestimación o disposición sumaria de una querella o solicitud sólo será revisable mediante la presentación de una oportuna reconsideración. Cuando la disposición del caso ocurre sin originalmente celebrar una vista, el DRNA celebrará la misma con el fin se considerar la moción de reconsideración.[16]

Es meritorio mencionar que la Ley 171-2018, mejor conocida como el *Plan de Reorganización del Departamento de Recursos Naturales de 2018*, transfirió, agrupó y consolidó en el DRNA las facultades, funciones, servicios y estructuras de la JCA, entre otras. Esta ley, dispuso que todos los

---

[15] Artículo 10.1 del Reglamento 6642.
[16] *Id.*, Artículo 29; incisos (1) y (3).

reglamentos, órdenes, resoluciones, cartas circulares y demás documentos administrativos vigentes que gobernaban la operación de la Junta de Calidad Ambiental continuarían vigentes hasta tanto fueran alterados, modificados, enmendados, derogados o sustituidos por el Secretario o la Secretaria.[17] De igual manera, en su sección 92 instruyó que "[c]ualquier referencia a la Junta de Calidad Ambiental, contenida en cualquier ley, reglamento o documento oficial del Gobierno de Puerto Rico, se entenderá enmendada a los efectos de referirse al Departamento de Recursos Naturales y Ambientales que se entenderá como su sucesor para todos los fines legales correspondientes."

**-III-**

Tal cual arriba indicamos, al comparecer ante nos Holsum señala la comisión de tres (3) errores. En el primero de estos, sostiene que el DRNA se equivocó al, en contra de su propio reglamento, denegar su solicitud de dispensa sin celebrar antes una vista evidenciaria para dirimir las controversias de hechos existentes. Específicamente, reclama que conforme a la Regla 27.1 del Reglamento Número 3672, *Reglas de Procedimiento de Vistas Administrativas de la Junta de Calidad Ambiental de Puerto Rico* del 19 de octubre de 1988, establece que, "[l]a Junta celebrará vistas cuasi judiciales en todo caso en que se adjudiquen hechos y derechos de otras partes". Así, expone que el lenguaje antes transcrito es claro y no reconoce discreción alguna, sino que hace mandatoria la audiencia. A su vez, añade y señala las controversias sustanciales que existen y deben ser dirimidas mediante la presentación de evidencia y la celebración de la vista.

En contra de este argumento, el DRNA niega que en el pleito fuera obligatorio celebrar una audiencia. A tales efectos, primero, señala que la Regla 301(B)(1) del Reglamento 5300 le dispensa del cumplimiento estricto de los requisitos sustantivos. Segundo, basándose en la ausencia de hechos

---

[17] Sección 91 de la Ley 171-2018.

incontrovertidos **y en la autoridad que por disposición del Artículo 29 del Reglamento Núm. 6442** tiene, sostiene que los procedimientos adjudicativos ante su consideración fueron resueltos sumariamente, no haciéndose necesaria la celebración de una vista.

Con el fin de disponer de este primer señalamiento de error, hemos estudiados las distintas disposiciones reglamentarias citadas por las partes. Al así hacerlo, advertimos que Holsum basa su primer argumento en las disposiciones de una reglamentación aprobada para gobernar los procedimientos administrativos ante la Junta de Calidad Ambiental. Por su parte, al defender la decisión recurrida, el DRNA hace referencia al Reglamento 6642, el que rige los procedimientos adjudicativos ante el DRNA. Particularmente, aquella disposición en la que se autoriza al DRNA a disponer de los asuntos sumariamente.

El procedimiento administrativo bajo el cual Holsum solicitó la dispensa, si bien se hizo al amparo del Reglamento 5300 de la Junta de Calidad Ambiental, fue presentado ante el DRNA. A la fecha en que la solicitud de adjudicación formal fue sometida, ya el DRNA había absorbido las funciones de la JCA. Por lo tanto, dicho procedimiento se atiende bajo el Reglamento Núm. 6442.[18]

Ahora, un estudio del aludido reglamento, particularmente del artículo citado por el DRNA, nos permite apreciar que la autoridad para resolver de forma sumaria que allí le fue reconocida está sujeta a ciertas reglas. Veamos.

Según el Artículo 29 sobre desestimación o disposición sumaria del Reglamento Núm. 6442, el oficial examinador que presida el procedimiento podrá recomendar que pueda disponerse del mismo de forma sumaria cuando no se plantean hechos que justifiquen la concesión de un remedio,

---

[18] Quedamos convencidos de ello, puesto que el propio DRNA cita y aplica en su comparecencia dicha regulación.

o cuando no haya controversia real en los hechos y como cuestión de derecho procesa que se dicte resolución a favor de la parte promovente. De igual manera, y según el aludido artículo, la determinación de desestimación o disposición sumaria de la querella o solicitud sólo será revisable por medio de la radicación de una oportuna moción de reconsideración desde la fecha de archivo en autos de la notificación de la Resolución u Orden. **Si la disposición del caso se hizo originalmente sin celebrar una vista, la agencia celebrará la audiencia para considerar la Moción de Reconsideración**.[19]

Podemos apreciar entonces que conforme las propias disposiciones reglamentarias citadas por el DRNA para defender la resolución sumaria de la dispensa, en aquellas circunstancias en las que la disposición del caso haya ocurrido sin haberse celebrado una audiencia, ésta deberá celebrarse cuando se solicita reconsideración de lo resuelto. En el presente caso, ante la denegatoria sumaria de su dispensa, Holsum oportunamente solicitó reconsideración de esta. No obstante, y en contra de lo que dispone el Reglamento Núm. 6442, en el caso no se celebró la correspondiente vista para discutir dicha reconsideración. Con este proceder, el DRNA actuó en contra de su propio reglamento, cometiéndose así el primer error señalado.

Debido a ello, procede intervenir a los efectos de revocar la *Resolución y Notificación* dictada en el caso con fecha del 21 de agosto de 2025, mediante la cual se declaró No Ha Lugar la solicitud de reconsideración y ordenar únicamente la celebración de la vista mandatada por el Artículo 29 inciso 3 del Reglamento Núm. 6442. [20]

---

[19] Véase, inciso (3) del Artículo 29 del Reglamento Núm. 6442.
[20] Debemos dejar claro, que la audiencia hoy ordenada por este Tribunal de Apelaciones es a los únicos efectos de cumplir a cabalidad el procedimiento estatuido por el Reglamento 6442 y conceder una vista para atender exclusivamente lo concerniente a la reconsideración de la denegatoria a la dispensa solicitada por Holsum. De ninguna manera debe entenderse que su concesión abre la puerta a descubrimiento de prueba alguno o a la inclusión de asuntos ajenos al expediente.

Habida cuenta de lo hoy resuelto, resulta innecesario atender el restante de los errores señalados por la recurrente.

**-IV-**

Por las razones antes dadas, y según adelantamos, revocamos la *Resolución y Notificación* emitida por el Departamento de Recursos Naturales y Ambientales con fecha del 21 de agosto de 2025 mediante la cual declaró No Ha Lugar la solicitud de reconsideración que Holsum instó.

Le ordenamos pues a que, a la mayor brevedad y conforme el inciso 3 del Artículo 29 del Reglamento Núm. 6442, cite una vista en la que se discuta y atienda **exclusivamente** la reconsideración solicitada en el caso por Holsum. Celebrada esta audiencia, deberá entonces resolver la reconsideración de la denegatoria. Así hecho, comenzará a transcurrir el término para solicitar la revisión judicial.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones